**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **VERNAL SAUNDERS,**<br>Plaintiff,<br>v.<br>**SANTA ROSA SYSTEMS, INC., *et al.*,**<br>Defendants. | Civil Action No. 26-00714 (ZNQ) (TJB)<br>**OPINION** |

**QURAISHI, District Judge**

**THIS MATTER** comes before the Court upon a Motion to Remand by Plaintiff Vernal Saunders ("Plaintiff"). ("Motion to Remand," ECF. No. 28.) Plaintiff filed a moving brief in support of the Motion to Remand. ("Pl. Moving Br.," ECF No. 28-1.) Defendants Wayfair LLC ("Wayfair"), Wayfair Inc.,[1] and Dane Revay ("Revay" and together with Wayfair, the "Wayfair Defendants") filed an opposition to the Motion to Remand. ("Wayfair Opp'n Br.," ECF No. 33.) Plaintiff filed a reply brief. ("Pl. Reply Br.," ECF No. 34.) Thereafter, Wayfair Defendants filed a Motion to Dismiss Plaintiff's Complaint. ("Motion to Dismiss," ECF No. 47.) Wayfair Defendants filed a moving brief in support of the Motion to Dismiss. ("Wayfair Moving Br.," ECF No. 47-1.) Plaintiff filed an opposition and simultaneously cross-moved for leave to file a first amended complaint ("Motion for Leave to Amend") ("Pl. Opp'n Br.," ECF Nos. 48, 48-1), attaching a proposed First Amended Complaint ("Proposed FAC"). Defendants Santa Rosa

[1] Wayfair, Inc. has been dismissed from this action. (ECF No. 43.)

Systems, Inc., Material Handling Systems, Inc., MHS Equipment, LLC, Fortna, Inc., Fortna Systems, Inc., and Fortna Equipment, LLC (collectively, "Santa Rosa") filed an opposition to the Motion to Dismiss. ("Santa Rosa Opp'n Br.," ECF No. 49.) Wayfair Defendants filed a reply brief. ("Wayfair Reply Br.," ECF No. 50.)

The Court has carefully considered the parties' submissions and decides the Motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, the Court will **GRANT** Plaintiff's Motion to Remand, and **DENY AS MOOT** Wayfair Defendants' Motion to Dismiss and Plaintiff's Motion for Leave to Amend.

## I. BACKGROUND AND PROCEDURAL HISTORY

The present dispute arises from an accident (the "Accident") that occurred on December 20, 2023 at Wayfair's Cranbury, New Jersey warehouse. (Notice of Removal, Exhibit A, Summons and Complaint ("Compl."), ECF No. 1–2, ¶¶ 1–5.) Plaintiff and Revay, both employees of Wayfair, were performing maintenance on a Three Stage Extendable Loader Conveyor machine designed and manufactured by Santa Rosa (the "Machine"). (*Id.* ¶¶ 1–5, 7.) The Machine caught Plaintiff's shirt sleeve, sucking in and crushing his left arm, which resulted in severe injuries to Plaintiff. (*Id.*) Plaintiff attempted to free his left arm from the Machine and fractured his right hand in the process. (*Id.*) His left arm was ultimately amputated because of the Accident. (*Id.*) On June 7, 2024, OSHA issued safety violations and citations, as well as a penalty fine, to Wayfair for the conditions related to the Accident. (*Id.* ¶ 6.)

On December 8, 2025, Plaintiff filed the Complaint against Defendants in New Jersey Superior Court, bringing state law claims against Santa Rosa for negligence, strict liability, and breach of warranty, and against Wayfair Defendants for intentional wrongdoing pursuant to New Jersey's Workman's Compensation Act (the "WCA"), N.J.S.A. 34:15–8. Specific to Revay, the

Complaint alleges that Revay, Plaintiff's supervisor and trainer at the time of the Accident, removed a plexiglass guard that protected workers from the Machine's conveyor prior to the Accident during the maintenance of the Machine, and subsequently activated the Machine without (i) reinstalling the plexiglass guard, and (ii) ensuring that Plaintiff was outside the zone of danger of the Machine. (*Id.*, Seventh Count ¶¶ 2–4.) Plaintiff alleges that Revay knew that making manual adjustments to the Machine while it was activated was too dangerous — and so he turned off the Machine to perform maintenance with Plaintiff — despite the fact that the manufacturer's manual for the Machine instructed that it was safe to make such adjustments while the Machine was activated. (*Id.* ¶ 5.) Nevertheless, Revay de-activated the machine for the maintenance, then re-activated it while Plaintiff was purportedly in the zone of danger. (*Id.*) Therefore, Plaintiff alleges that Revay knew with substantial certainty that activating the Machine while Plaintiff was in the zone of danger would cause serious injury. (*Id.*)

On January 22, 2026, Wayfair filed a Notice of Removal. (ECF No. 1.) Santa Rosa filed an Answer to the Complaint and a Cross Claim for Indemnity and Contribution against all other defendants. ("Cross Claim," ECF Nos. 17, 23.)[2] Plaintiff filed his Motion to Remand on March 5, 2026. (ECF No. 28.) Wayfair Defendants subsequently filed their Motion to Dismiss on May 22, 2026. (ECF No. 47.) In opposing the Motion to Dismiss, Plaintiff moved for leave to file a first amended complaint. (ECF No. 48.) The Court addresses these motions in turn.

## II. <u>SUBJECT MATTER JURISDICTION</u>

Wayfair, as the removing defendant, asserts that the Court has subject matter jurisdiction over this suit based on 28 U.S.C. § 1332 because the properly joined parties are completely diverse and the value of the matter in controversy exceeds $75,000.

[2] For reasons unclear the Santa Rosa defendants appear to have filed the same Answer and Cross Claim twice: once on February 4 and a second time on February 23.

## III. <u>LEGAL STANDARD</u>

### A. MOTION TO REMAND

Federal district courts have original diversity jurisdiction over all civil actions where the amount in controversy exceeds $75,000 and the action is between citizens of different states. 28 U.S.C. § 1332(a). Party joinder is permissible where the claim "aris[es] out of the same transaction, occurrence, or series of occurrences," and involves "any question of law or fact common to all defendants." Fed. R. Civ. P. 20(a). The right to remove a civil action from state court is retained by a defendant if the case could have been originally brought in federal court, such as through diversity jurisdiction. 28 U.S.C. § 1441(b).

Section 1447(c) states that a case removed from state court "shall be remanded . . . [i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction." 28 U.S.C. § 1447(c). When determining if an action should be remanded, a district court must focus on the operative complaint ***at the time the petition for removal was filed***. *Steel Valley Auth. v. Union Switch and Signal Div.*, 809 F.2d 1006, 1010 (3d Cir. 1987) (emphasis added). If a complaint raises no question of federal law, a district court may exercise subject matter jurisdiction only if the amount in controversy exceeds the value of $75,000 and complete diversity exists among the adverse parties. 28 U.S.C. § 1332(a); *Lincoln Property Co. v. Roche*, 546 U.S. 81, 83–84 (2005). As the party removing the case, the defendant bears the "burden to prove that federal court jurisdiction is proper at all stages of the litigation." *Stephens v. Gentilello*, 853 F. Supp. 2d 462, 465 (D.N.J. 2012). Any contested issues of fact and uncertainties of law must be resolved in favor of the plaintiff. *Boyer v. Snap–On Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990), *cert. denied*, 498 U.S. 1085 (1991). Further, the court is tasked with construing removal statutes strictly

so as to "resolve all doubts in favor of remand." *Stephens*, 853 F. Supp. 2d at 465 (quoting *Abels v. State Farm Fire & Cas. Co.*, 770 F.2d 26, 29 (3d Cir. 1985)).

**B. FRAUDULENT JOINDER**

The doctrine of fraudulent joinder provides an exception to the requirement that removal be established entirely upon complete diversity. *In re Briscoe*, 448 F.3d 201, 215–16 (3d Cir. 2006). If there is no separate federal question jurisdiction, the removing defendant may avoid remand only by demonstrating that the non-diverse party was fraudulently joined. *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 851 (3d Cir. 1992). However, because the removing party imposes jurisdiction upon a federal court, the removing party incurs a "heavy burden" of persuasion to prove that a party has been joined fraudulently. *Id.* (quoting *Steel Valley*, 809 F.2d at 1012 n.6); *see also Boyer*, 913 F.2d at 111. To determine whether the removing party has met that burden, a court may undertake a limited piercing of the pleadings to consider (i) "reliable evidence" cited in support of removal, *In re Briscoe*, 448 F.3d at 215, as well as (ii) documents referenced in the complaint, *In re Burlington Coat Factory*, 114 F.3d 1410, 1426 (3d Cir. 1997). Joinder may be found to be fraudulent "when there is no reasonable basis in fact or colorable ground supporting the claim against the joined defendant, or no real intention in good faith to prosecute the action against defendants or seek a joint judgment." *Batoff*, 977 F.2d at 851 (quoting *Boyer*, 913 F.2d at 111). However, "[i]f there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper and remand the case to state court." *Id.* (quoting *Boyer*, 913 F.2d at 113).

**C. INTENTIONAL WRONG UNDER THE WORKER'S COMPENSATION ACT**

The WCA constitutes a "trade-off whereby employees relinquished their right to pursue common-law remedies in exchange for automatic entitlement to certain, but reduced, benefits

whenever they suffered injuries by accident arising out of and in the course of employment." *Millison v. E.I. du Pont de Nemours & Co.*, 101 N.J. 161, 174 (1985). The WCA permits an "intentional wrong" exception to immunity in "rare and extreme factual circumstances." *Kibler v. Roxbury Bd. of Educ.*, 392 N.J. Super. 45, 52–53 (App. Div. 2007). The conduct required to constitute an "intentional wrong" under the WCA must be egregious. *Fermaintt ex rel. Estate of Lawlor v. McWane, Inc.*, 694 F. Supp. 2d 339, 344 (D.N.J. 2010). In *Millison*, the New Jersey Supreme Court established a two-prong test to determine the existence of an intentional wrong: a conduct and context prong. 101 N.J. at 177.

First, the defendant's conduct must be such that there was "substantial certainty" of injury or death. *Millison,* 101 N.J. at 178. "The mere knowledge and appreciation of a risk—something short of substantial certainty—is not intent." *Id.* at 177 (quoting W. Prosser and W. Keeton, *The Law of Torts,* § 80 at 569 (5th ed.1984)). Moreover, "a defendant does not engage in an intentional wrong when he is negligent by acting in the belief or consciousness that the act is causing an appreciable risk of harm to another or when the defendant is acting recklessly or wantonly facing even a greater risk." *McWane, Inc.*, 694 F. Supp. 2d at 344 (citing *Millison*, 101 N.J. at 177–178 (acknowledging that in evaluating the substantial certainty standard "every undertaking, particularly certain business judgments involve some risk, but that willful employer misconduct was not meant to go undeterred.")). Therefore, while "[t]he distinctions between negligence, recklessness, and intent are obviously matters of degree, albeit subtle ones," courts must determine whether "virtual certainty" of injury or death existed under the conduct prong. *Millison*, 101 N.J. at 178.

Second, under the context prong, courts evaluate whether "the resulting injury or disease, and the circumstances in which it is inflicted on the worker, fairly be viewed as a fact of life of

industrial employment, or is it rather plainly beyond anything the legislature could have contemplated as entitling the employee to recover *only* under the Compensation Act[.]" *Id.* at 179 (emphasis in original). Therefore, an "intentional wrong" is only present if the "employer acted with knowledge that injury was substantially certain to occur[ and] also whether the injury and the circumstances surrounding it were part and parcel of everyday industrial life or plainly outside the legislative grant of immunity." *Laidlow v. Hariton Machinery Co., Inc.,* 170 N.J. 602, 614–15 (2002). Further, "determining whether the context prong has been satisfied is solely a judicial function." *Mull v. Zeta Consumer Prods.,* 176 N.J. 385, 392 (2003) (quotations omitted).

## IV. <u>DISCUSSION</u>

### A. SUBJECT MATTER JURISDICTION

Plaintiff argues that removal to this Court was improper and, as a result, remand is required. (Pl. Moving Br. at 1.) Specifically, Plaintiff asserts that this action was non-removable when initially filed because Revay was properly named as a defendant, and therefore this case lacks complete diversity of citizenship. (*Id.* at 6–11.) The parties do not dispute that Plaintiff and Revay are both New Jersey Residents.[3] (Notice of Removal at "Introductory Statement"); (*see generally* Pl. Moving Br.) Instead, the present dispute is centered around whether Plaintiff's claim against Revay is frivolous and not colorable such that Revay's citizenship should be ignored for purposes of assessing diversity jurisdiction. (Notice of Removal, "Introductory Statement"; ¶ 9.)

[3] The Complaint alleges that Plaintiff is a New Jersey resident (*see* Compl.), but fails to allege that Revay also resides in New Jersey (*id.*). Wayfair Defendants aver, however, that "[a]ll defendants are citizens of different states than Plaintiff, except Revay." (Notice of Removal, "Introduction.") Plaintiff does not dispute this assertion in the Motion to Remand. (*See generally* Pl. Moving Br.) Because the Court construes the Motion to Remand as a substantive attack on diversity jurisdiction, the Court accepts the undisputed assertion that Plaintiff and Revay are non-diverse residents of New Jersey.

**B. FRAUDULENT JOINDER ANALYSIS**

In substance, Plaintiff alleges that he and Revay, in the course of their employment with Wayfair, were performing maintenance on the Machine when the Machine caught Plaintiff's shirt sleeve and pulled Plaintiff's left arm into the Machine, crushing his arm which ultimately had to be amputated; Plaintiff's right hand was fractured in the process of trying to free his left arm from the Machine. (Compl., First Count ¶¶ 3–4.) Plaintiff alleges that during this maintenance, Revay: (i) removed a plexiglass guard from the Machine that was in place to protect against any body parts being caught in the Machine, and (ii) activated the Machine without ensuring that Plaintiff was outside the zone of danger. (*Id.*, Seventh Count ¶¶ 3–4.) Plaintiff alleges that Revay's actions constitute an intentional wrong that pierce Revay's immunity under the WCA. (*Id.* ¶ 7.)

Wayfair Defendants argue that Plaintiff alleges no colorable claim against Revay and that Revay was fraudulently joined to defeat diversity. (Wayfair Opp'n Br. at 8–10.) Wayfair Defendants contend that Plaintiff's allegations are conclusory and more specific factual allegations are necessary to allege a colorable claim for an intentional wrong against Revay under the WCA. (*See id.* at 9 ("Pleading that Revay acted with knowledge that it was substantially certain that [Plaintiff] would suffer an injury is a conclusory allegation not a factual allegation.").) Specifically, Wayfair Defendants aver that the allegations against Revay do not pierce his immunity under the WCA because Plaintiff fails to plead facts that Revay acted with knowledge that it was substantially certain that Plaintiff would be injured. (Wayfair Opp'n Br. at 14–16.) Wayfair Defendants identify the operative allegations against Revay in the Complaint: (i) Revay intentionally removed the plexiglass guard from the Machine; (ii) Revay decided not to conduct repairs or adjustments while the Machine was running, despite knowing that the Machine's manual stated that it was safe to do so; and (iii) Revay knew Plaintiff was "in the vicinity of the Machine's

zone of danger" when he turned the Machine back on. (*Id.* at 15); (Compl., Seventh Count ¶¶ 3–6.) Conversely, Plaintiff maintains that the complaint meets the liberal standard for a fraudulent joinder analysis and sets out a colorable claim against Revay as an intentional tortfeasor, piercing immunity under the WCA and rendering Revay liable to suit. (Pl. Moving Br. at 6–11); (Pl. Reply Br. at 6–7.)

It is generally understood that even if the allegations in a complaint are formulaic and sparse, when undertaking a fraudulent joinder analysis, a district court must not, "in the guise of deciding whether the joinder was fraudulent" step beyond the jurisdictional inquiry into one of merits. *Boyer*, 913 F.2d at 112. As a result, if there is "even a possibility . . . that the complaint states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper and remand the case to state court." *Batoff*, 977 F.2d at 851. The "heavy burden" of showing the impossibility of a claim is shouldered solely by the defendant. *In re Briscoe*, 448 F.3d at 223.

The Court is persuaded that Plaintiff has stated a colorable claim for intentional wrong against Revay. In *Laidlow*, the New Jersey Supreme Court held that while "removal of a safety guard can meet the intentional wrong standard[,] . . . such a determination requires a case-by-case analysis." 170 N.J. at 619 (citing *Mabee v. Borden, Inc.*, 316 N.J. Super. 218 (App. Div. 2018)). In analyzing employer liability of whether there existed a substantial certainty that an injury would result from the removal of a safety guard, the *Laidlow* Court acknowledged that "[t]he crucial fact is not so much what [the employee] did, but what he *knew*." *Id.* at 619–20 (emphasis added) (quoting *Laidlow v. Hariton Machinery Co., Inc.*, 335 N.J. Super. 330, 350 (App. Div. 2000) (Judge Lintner, dissenting)).

As stated, Plaintiff alleges that Revay intentionally removed the plexiglass guard from the Machine, had a practice of not making adjustments to the Machine while it was activated (Revay knew that being near the Machine while it was activated was dangerous), and knew Plaintiff was "in the vicinity of the Machine's zone of danger" when he turned the Machine back on. (Compl., Seventh Count ¶¶ 3–6.) These facts alleged by Plaintiff, taken as true, certainly establish — at the very least — a possibility that there is a valid cause of action against Revay because Revay's alleged conduct leading up to the accident suggests that he may have known that activating the Machine while Plaintiff was nearby was substantially certain to cause Plaintiff severe injury. And the possibility that Revay acted with such knowledge or intent is sufficient to tether Revay to a colorable claim. Wayfair Defendants are unable to meet their heavy burden to establish that no colorable claim exists — nowhere in the Complaint does Plaintiff foreclose the possibility that Revay acted with substantial certainty that his conduct would cause Plaintiff injury. In fact, as to Revay's knowledge and state of mind, the Complaint alleges that Revay had a pattern or practice of not performing maintenance on the Machine while it was activated. It could be that Revay knew that an individual's mere presence near the Machine, while activated, posed significant risks that facilitated this practice — even though the Machine's product manual purportedly permitted such conduct. It could also be that Revay felt the Machine was unsafe to perform maintenance on — to touch the Machine or be close enough to do so — only while it was activated, and that he had no idea that Plaintiff would be close enough to the Machine to be at risk of injury. Those facts simply cannot be gleaned from the face of the Complaint, but what can be determined is that the Complaint does not foreclose either theory, and therefore states a colorable claim against Revay.

Because Plaintiff's claim against Revay, as pleaded in the Complaint, is colorable, his joinder was not fraudulent. Accordingly, the requisite party diversity is not present, which means

this Court does not have subject matter jurisdiction over this action. It must be remanded to the Superior Court of New Jersey.

## V. CONCLUSION

For the reasons stated above, the Court will **GRANT** Plaintiff's Motion to Remand, and in turn the Court will **DENY AS MOOT** Wayfair Defendants' Motion to Dismiss and Plaintiff's Motion for Leave to Amend. These denials are without prejudice to the parties' right to renew them upon remand to state court. An appropriate Order will follow.

Date: **October 28, 2026**

s/ Zahid N. Quraishi
**ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**